**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KARLA SAUNDERS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 11-cv-486 (RMC)** |
| ) | |
| **KAREN G. MILLS, Administrator,** ) | |
| **Small Business Administration** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

Karla Saunders is a long-time federal employee currently employed with the

Small Business Administration ("SBA" or "Agency"). She complains here of discrimination

based on her sex (female) and race (African American); retaliation for protected Equal

Employment Opportunity ("EEO") activity; and a hostile work environment. Karen Mills is sued

in her official capacity as the Administrator of the SBA. The SBA has moved for partial

dismissal of Plaintiff's complaint, arguing that Ms. Saunders has failed to state a claim for relief.

The Court will grant in part and deny in part Defendant's motion.

**I.  FACTS**

Karla Saunders is a Black female employed with the SBA. In October 2005, Ms.

Saunders applied for and was selected as the Chief of the Training and Benefits Division

("Training Chief") in the Agency's Office of Human Capital Management. As Training Chief,

Ms. Saunders managed the Agency's centralized training and benefits program. She supervised a

total of seven subordinates, including one GS-14 Training Specialist, three GS-13 Training

Specialists, one GS-12 Benefits Specialist, and one GS-4 Administrative Assistant.  Richard

Brechbiel, the Chief Human Capital Officer, selected Ms. Saunders for the position and became

her supervisor.  Mr. Brechbiel consistently rated Ms. Saunders as "Highly Successful" or

"Outstanding" and promoted her to the GS-15 level after she had been serving as Training Chief

for approximately one month.

      Sometime in 2005, Janice Chiverton, an African American female employee,

applied for a position within the SBA under Mr. Brechbiel.  Mr. Brechbiel did not select Ms.

Chiverton for the position and instead hired Sharon Brown, a Caucasian female.  Ms. Chiverton

initiated a discrimination complaint against the Agency based upon her nonselection.  Ms.

Saunders supported Ms. Chiverton's complaint by filing an affidavit and giving deposition

testimony indicating that Ms. Brown was not qualified for the position and was selected because

she was romantically involved with Mr. Brechbiel.

      Ms. Saunders claims that shortly after her deposition testimony (in January 2007)

Mr. Brechbiel began to harass her in retaliation for her testimony.  On April 9, 2007, Ms.

Saunders and two co-workers filed a "request for intervention" alleging that Mr. Brechbiel and

his supervisors had committed illegal, discriminatory, and retaliatory acts and requesting help

from the Small Business Administrator.  After receiving the request, the SBA hired Paul,

Hastings, Janofsky & Walker, LLP ("Paul Hastings") to investigate the claims.  After the

investigation began, Ms. Saunders filed a formal EEO complaint with the Agency on July 6,

2007 alleging discrimination and retaliation by Mr. Brechbiel.

      Paul Hastings completed its investigation in the fall of 2007.  Shortly thereafter,

both Mr. Brechbiel and his supervisor were transferred to other positions within the SBA.

Napoleon Avery took over Mr. Brechbiel's position on November 2, 2007.  Two months later, Ms. Saunders was informed that she would be detailed to the Department of Labor ("DOL"). Ms. Saunders' detail extended from February 11, 2008 to July 30, 2008.  Mr. Avery detailed Dionne Martin (a Black female) to replace Ms. Saunders as Training Chief.  When Ms. Saunders left for the DOL detail, she was supervising five Training Specialists: one GS-14, one GS-13, one GS-12, and two GS-11.

On July 30, 2008, Ms. Saunders sent an email to Mr. Avery indicating that her detail to the DOL was ending and asking when she could return to her position as Training Chief. Mr. Avery did not respond.  Ms. Saunders went in person to the SBA on July 31, 2008 and spoke with Mr. Avery.  Mr. Avery indicated that Ms. Martin was still detailed to the Training Chief position, and he told Ms. Saunders that she would be detailed to the Agency's Office of Entrepreneurial Development ("OED").  Ms. Saunders opposed the second detail but was given no choice in the matter.

Ms. Saunders began the detail to the OED on August 11, 2008.  Seven months later, Ms. Saunders sent an email to Mr. Avery indicating that her OED detail had ended and asking whether she could return to her former position as Training Chief.  Mr. Avery responded that the Agency was still trying to determine where her skills could best be utilized.  Shortly thereafter, the SBA reassigned Ms. Saunders to the Agency's Office of Faith Based and Community Initiatives as a Senior Advisor.  Ms. Saunders opposed the reassignment because the position was not managerial or supervisory and was thus inferior to her position as Training Chief.  Plaintiff subsequently contacted the EEO Office charging that the reassignment to the Office of Faith Based and Community Initiatives was discriminatory and retaliatory.

Ms. Saunders reported to her new position with the Office of Faith Based and Community Initiatives on May 24, 2009.  She served in this position for one year.  She complains here that she had no work during most of that time, that she had no performance standards, and that she did not receive a performance evaluation.

In June 2009, Ms. Martin's detail as Training Chief ended.  The SBA issued an announcement that the position was vacant and that it was accepting applications.  Ms. Saunders applied for the position but was not interviewed or selected.

A hearing was held on Ms. Saunders' original discrimination complaint in February 2010.  The Administrative Judge ultimately held that Mr. Brechbiel had not discriminated against Ms. Saunders and did not retaliate against her after she testified in support of Ms. Chiverton's discrimination claim.  Before this ruling issued, however, the Office of Special Counsel and the SBA entered into an oral agreement under which Ms. Saunders was to be returned to her position as Training Chief.  Ms. Saunders alleges here that the Agency restored her job title but severely diminished her responsibilities.  Specifically, Ms. Saunders alleges that the SBA reduced the number of employees she supervised and assigned oversight of many programs from her to other employees within the SBA.  Additionally, a few months after returning to the position, Ms. Saunders received a letter of counseling from Kevin Mahoney, her direct supervisor.  Ms. Saunders claims that the letter was retaliatory and "based on bogus, inaccurate and contradictory information . . . ."  Compl. ¶ 100.

In December 2010, Plaintiff learned that she received a performance rating of "4" ("Highly Successful") for fiscal year 2009.  Ms. Saunders complains that this evaluation was

discriminatory and retaliatory. She filed an EEO complaint with respect to this evaluation on January 24, 2011.

Ms. Saunders filed the present Complaint on March 7, 2011. She complains of numerous instances of retaliation and discrimination based upon her gender, race, and protected EEO activities. The SBA moves to dismiss Plaintiff's complaint in part. Specifically, it moves to dismiss: (1) Plaintiff's claims regarding her details to the DOL and OED because the claims are time barred; (2) Plaintiff's claim regarding her 2009 performance evaluation because it is premature; (3) Plaintiff's claim that her responsibilities and duties were improperly diminished after she returned to the Training Chief position because the alleged diminished duties are not "adverse actions;" (4) Plaintiff's claim that she received a "bogus" letter of counseling because the letter is not an "adverse action;" and (5) Plaintiff's hostile work environment claim because Plaintiff's allegations do not meet the legal definition of a hostile work environment.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

A court must treat the complaint's factual allegations as true "even if doubtful in fact." *Twombly*, 550 U.S. at 555.  But a court need not accept as true legal conclusions set forth in a complaint.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III. ANALYSIS

#### A.  DOL and OED Details

Ms. Saunders complains that her detail to the DOL on February 6, 2008 and her detail to the OED on August 6, 2008 were discriminatory and retaliatory.  Ms. Saunders' claims fail, however, because she did not exhaust her administrative remedies by contacting an EEO counselor within 45 days of the alleged discriminatory actions.

"Because timely exhaustion of administrative remedies is a prerequisite to a Title VII action . . . a court may not consider a discrimination claim that has not been exhausted." *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008).  The exhaustion requirement is not "a massive procedural roadblock to access to the courts." *McRae v. Librarian of Congress*, 843 F.2d 1494, 1496 (D.C. Cir. 1988).  Instead, "[e]xhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).   Thus, "[a] Plaintiff who fails to comply, to the letter, with administrative deadlines ordinarily will be denied a judicial audience." *Id.* at 13.

Under Title VII, a federal employee who believes she has been discriminated against "must initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory. . . ." 29 C.F.R. § 1614.105(a); *see also Weber v. Batista*, 494 F.3d 179, 182-83 (D.C. Cir. 2007). This 45-day limit may be extended, however, if the employee "did not know and reasonably should not have known that the discriminatory matter or personnel action occurred . . . ." 29 C.F.R. § 1614.105(a)(2). In such a case, the 45-day clock is tolled until the aggrieved employee has a "reasonable suspicion" that she has been the victim of discrimination. *E.g., Hutchinson v. Holder*, 668 F. Supp. 2d 201, 214 (D.D.C. 2009). A plaintiff cannot wait until "[s]he has direct proof of the allegedly discriminatory actions; rather [she must] file an EEOC charge even if [s]he is not in possession of the supportive facts necessary to prosecute a discrimination charge." *Johnson v. Gonzales*, 479 F.Supp.2d 55, 59 (internal quotations omitted).

Ms. Saunders was detailed to the DOL in February 2008 and to the OED in August 2008. She did not initiate EEO counseling with respect to either detail until June 30, 2009, more than sixteen months after the first detail and ten months after the second. Ms. Saunders claims that she did not have a "reasonable suspicion" that the details were discriminatory until June 26, 2009 when: (1) two co-workers informed her that Ms. Martin (who took over her position as Training Chief) was not qualified for the position, and (2) she learned from another co-worker that her supervisors had conspired to remove her from her position as Training Chief permanently. The argument fails, however, because the complaint alleges that "[o]n March 5, 2009 – a little over one month after [Darryl] Hairston became Acting Administrator – he took steps to formally reassign Plaintiff to yet another position. This gave

Plaintiff a clear signal that Hairston was never going to allow Plaintiff to return to her former position and demonstrated that her detail to OED had no legitimate non-discriminatory purpose." Compl. ¶ 32.  Accordingly, as of at least March 5, 2009, Ms. Saunders had more than just a "reasonable suspicion" that the details were discriminatory — she was given "a clear signal" that she would not be returned to her position and believed that the detail "had no legitimate non-discriminatory purpose."  At best, Ms. Saunders had 45 days (until April 20, 2009) to contact an EEO counselor.  Because she did not contact an EEO counselor until June 30, 2009, Ms. Saunders' claims with respect to these two details will be dismissed.

### B.  2009 Performance Rating

According to Ms. Saunders, she received her performance rating for fiscal year 2009 (October 1, 2008 to September 30, 2009) in December 2010.  Ms. Saunders alleges that the rating was discriminatory and retaliatory and did not accurately reflect her performance.  She filed a complaint with the SBA with respect to the performance rating on January 24, 2011. Because Ms. Saunders filed her Complaint in this Court before the SBA issued a final decision and before 180 days had elapsed from the time of her administrative complaint, this claim will be dismissed without prejudice.

As noted above, a federal employee who believes she has been discriminated against must initiate contact with an EEO Counselor within 45 days.  *See* 29 C.F.R. § 1614.105(a). If the matter is not resolved informally with the counselor, the employee may then file a formal discrimination complaint with the agency.  *Id.* § 1614.105(d) & 1614.106(a).  The agency then has 180 days to complete an investigation into the alleged discrimination.  *Id.* § 1614.106(e)(2).  After the agency issues a final decision, or if the 180 days have expired without

-8-

a final decision, an aggrieved employee can file suit in federal court. *See* 42 U.S.C. § 2000e-16(c). If a plaintiff files suit before 180 days have elapsed or before the agency has issued a final decision, the complaint must be dismissed. *See, e.g. Murthy v. Vilsack*, 609 F.3d 460, 465-66 (D.C. Cir. 2010).

In the present case, Ms. Saunders filed her discrimination complaint with the SBA on January 24, 2011. Ms. Saunders filed her Complaint with this Court on March 7, 2011. The SBA did not issue a final decision on Ms. Saunders' complaint, and the 180-day investigatory period did not expire until July 24, 2011. Because Ms. Saunders filed her Complaint before the Agency issued a final decision and before the 180-day period elapsed, the Court will dismiss her claim regarding her performance evaluation without prejudice. *Cf. Murthy*, 609 F.3d at 465-66 ("[T]he filing of an amended complaint after the 180-day period expired cannot cure the failure to exhaust.").

### C. Diminished Duties and Responsibilities

After Ms. Saunders returned to her position as Training Chief on or around June 1, 2010, she alleges that the SBA discriminated against her by reducing her duties and responsibilities. The SBA moves to dismiss this claim arguing that even if true, the alleged reduction is not an "adverse action" that can support either a claim of discrimination or retaliation. The Court disagrees and holds that, viewing all facts in a light most favorable to Ms. Saunders, the totality of the actions she complains of might support a claim for discrimination and retaliation.

Whether an action is sufficiently "adverse" to support a claim under Title VII depends on whether plaintiff alleges that the action was discriminatory or retaliatory.[1]  If a plaintiff claims the action was discriminatory, the plaintiff must show "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities."  *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999).  The employment decision must inflict "objectively tangible harm."  *Russell v. Principi,* 257 F.3d 815, 818 (D.C. Cir. 2001).  "An employment decision does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage."  *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (citation omitted).  *See also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").  "Withdrawing an employee's supervisory duties . . . [or] reassignment with significantly different responsibilities" can constitute an adverse employment action.  *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) (internal citations and quotations omitted).

If a plaintiff claims the action was retaliatory, she need only show that the action "could well dissuade a reasonable employee from making or supporting a charge of discrimination."  *Burlington Northern*, 548 U.S. at 57.  "[T]he proscription against retaliation

---

[1] Title VII speaks of retaliation as a form of discrimination, 42 U.S.C. § 2000e-3(a).  The Court refers to "discrimination" as the "core antidiscrimination provision [of Title VII]," (*i.e.*, discrimination based upon race, color, religion, sex, or national origin), *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006), and "retaliation" as discrimination based upon an employee engaging in protected activity, 42 U.S.C. § Section 2000e-3(a).

sweeps more broadly than the proscription against discrimination." *Gaujacq v. EDF, Inc.*, 601

F.3d 565, 577 (D.C. Cir. 2010) (citing *Burlington*, 548 U.S. at 66–67).   Unlike discriminatory

actions, retaliatory actions need not be employment related or occur in the workplace, to be

prohibited by Title VII, *Burlington Northern*, 548 U.S. at 67, nor must they result in a "a

materially adverse change in the terms or conditions of [one's] employment." 548 U.S. at 70.

Whether an action "is materially adverse depends upon the circumstances of the particular case,

and 'should be judged from the perspective of a reasonable person in the plaintiff's position,

considering all the circumstances.'" *Id.* at 71 (quoting *Oncale v. Sundowner Offshore Svcs., Inc.*,

523 U.S. 75, 81 (1998)).

          Ms. Saunders alleges that when she returned as Training Chief, SBA significantly

diminished her duties.   Specifically, Ms. Saunders complains that (1) her supervisory

responsibilities were greatly diminished, and (2) she no longer oversaw important initiatives and

programs.   First, the Agency reassigned two of Ms. Saunders' most senior subordinates —

Shawn Thompson and Rebecca Archer.   Shawn Thompson was a GS-14 Training Specialist and

the most senior, direct subordinate of Ms. Saunders.   Shortly before Ms. Saunders returned to her

position as Training Chief, Mr. Thompson was told to report to Mara Kaman instead of Ms.

Saunders.   Ms. Kaman was not even a part of the Training and Development Division in which

Mr. Thompson and Ms. Saunders were assigned.   Similarly, Ms. Saunders was no longer allowed

to supervise Ms. Archer, although the Complaint does not indicate where or to whom Ms. Archer

was reassigned.   In addition to reassigning subordinate employees, Ms. Saunders alleges that the

Agency deliberately failed to approve individuals she had selected to fill vacancies.   As a result,

although the Training Chief supervised five subordinate employees as late as 2009, by October 14, 2010, Ms. Saunders had no employees to supervise.

Second, Ms. Saunders complains that many of the initiatives she previously supervised as Training Chief were farmed out to different divisions.  These included the "Leadership Development Training Program," the "Excellence in Government Fellows Program," the "Agency Manager/Supervisor Training Program," and the "Performance Management Training Program."

These changes led to a material change in the "terms, conditions, or privileges of [Ms. Saunders'] employment or her future employment opportunities." *Brown*, 199 F.3d at 457; *Cf. Czekalski*, 475 F.3d 360 (reassignment that did not affect the salary or benefits of employee nonetheless was adverse because prior job involved the supervision of hundreds of employees and a significant budget and the new position involved no budget and the supervision of only 10 employees).  The motion to dismiss Ms. Saunders' claim for discrimination with respect to her diminished responsibilities will be denied.

With respect to Ms. Saunders' claim that the diminished responsibilities were retaliatory, "'[a]dverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1192 n.4 (D.C. Cir. 2008).  Because the Court has found that the diminished responsibilities constituted a material change in her employment, the Court also holds that such diminished responsibilities would dissuade a reasonable employee from making or supporting a charge of discrimination. *See Burlington Northern*, 548 U.S. 60 (transferring employee from forklift operator to more

arduous track labor duties was materially adverse action).  Defendant's motion to dismiss Ms.

Saunders' claim of retaliation with respect to her diminished responsibilities will be denied.

### D.  Letter of Counseling

In December 2009, Kevin Mahoney took over Mr. Avery's position as Chief of

Human Capital and became Ms. Saunders' immediate supervisor.  On July 1, 2010, Mr.

Mahoney sent Ms. Saunders a letter of counseling which Ms. Saunders alleges was "based on

bogus, inaccurate and contradictory information indicating that Plaintiff had disrespected his

supervision."  Compl. ¶ 100.  The letter revolved around the aforementioned reassignment of Mr.

Thompson, who had previously reported to the Training Chief but was transferred to Ms. Kaman.

In his letter, Mr. Mahoney criticized Ms. Saunders for telling Mr. Thompson to report to her even

though Mr. Mahoney had already told Ms. Saunders that Mr. Thomson had been reassigned and

was not her subordinate.  *See* Mot. to Dismiss Ex. G.[2]  Mr. Mahoney recounted conversations he

had with Ms. Saunders regarding Mr. Thompson and his reassignment and stated that Ms.

Saunders' "fail[ed] to follow my instructions" and that her "conduct [was] unacceptable and

must not continue."  *Id.*  The letter indicated that it was not disciplinary and would not be made

part of Ms. Saunders' personnel file but that the letter was "designed solely to inform [Ms.

Saunders] that [her] conduct, as noted above, will not be tolerated in the future."  *Id.*  There was

no abusive language in the letter and its substance was entirely work related.  *See id.*

---

[2] The Court considers the Letter of Counseling attached to Defendant's Motion to Dismiss without converting the motion to one for summary judgment because the letter is repeatedly referenced in the Complaint, *see* Compl. ¶¶ 100, 105, and 123(h), and "is central to plaintiff's claim" that the letter was retaliatory and discriminatory.  *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999).

The parties dispute whether the July 2010 letter constitutes an adverse action under either the retaliation or discrimination standards. Because the Court finds that the letter is not an adverse action under even the broader standard for retaliation, the Court will dismiss both the retaliation and discrimination claim. *Cf. Evans v. District of Columbia*, 754 F.Supp.2d 30, 47 ("Having concluded that the reduction in plaintiff's duties was potentially significant to constitute an 'adverse employment action,' if follows that plaintiff has also established the 'materially adverse action' necessary to support a retaliation claim.")

In *Baloch v. Kempthorne*, the plaintiff claimed that he was retaliated against for engaging in protected activity. 550 F.3d 1191 (D.C. Cir. 2008). Baloch complained that he was issued a letter of counseling, letter of reprimand, and unsatisfactory performance review all in retaliation for his discrimination complaints. The D.C. Circuit held that none of the three actions was "materially adverse." *Id.* at 1193. The Circuit noted that the letters "contained no abusive language, but rather job-related constructive criticism, which 'can prompt an employee to improve her performance.'" *Id.* (quoting *Whittaker v. N. Ill. University*, 424 F.3d 640, 647 (7th Cir. 2005)). The evaluation was also not actionable because it did not result in any financial harm. *Id.*

Just as in *Baloch*, the letter here contained job related criticism, and there is no allegation that the letter resulted in financial harm to Ms. Saunders. Ms. Saunders may have disagreed with the letter, but it cannot be said that a reasonable employee would be dissuaded from making or supporting a claim of discrimination based upon it. As such, the letter is not a materially adverse action. *See id; see also Herbert v. Architect of the Capitol*, 766 F. Supp. 2d 59 (D.D.C. 2011) (letter of reprimand for employee's "failure to follow a supervisor's directive

-14-

and unprofessional and discourteous conduct" was not materially adverse action); *Hyson v.*

*Architect of the Capitol*, 802 F.Supp.2d 84, 102 (D.D.C. 2011) ("A letter of counseling . . . if not

abusive in tone or language or a predicate for a more tangible form of adverse action, will rarely

constitute materially adverse action under Title VII."); *Reshard v. Lahood*, No. 97-cv- 2794,

2010 WL 1379806, at *17 (D.D.C. Apr. 7, 2010) (letter of reprimand for employee's failure to

perform assigned duties not materially adverse, even though it would be placed in employee's

personnel file for up to three years); *Cochise v. Salazar*, 601 F.Supp.2d 196, 198–99 & 201

(D.D.C. 2009) (letter of counseling "highlight[ing] plaintiff's 'rude and discourteous behavior'"

and asking plaintiff to respect other employees would not have dissuaded a reasonable worker

from making a charge of discrimination), *aff'd*, 377 Fed.Appx. 29 (D.C.Cir. 2010); *Harper v.*

*Potter*, 456 F.Supp.2d 25, 29 (D.D.C. 2006) (letter of "suspension" for failure to perform

assigned duties that could remain in employee's personnel file for two years and serve as the

basis for future discipline was not materially adverse where suspension was hypothetical and the

letter was expunged and "bore no consequences");

### E.  Hostile Work Environment

"To determine whether a hostile work environment exists, the court looks to the

totality of the circumstances, including the frequency of the discriminatory conduct, its severity,

its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550

F.3d at 1201.  To prevail on a hostile work environment claim, a plaintiff must show that her

employer subjected her to "discriminatory intimidation, ridicule, and insult" that is "sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive

working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav.*

*Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).   The conduct must be sufficiently extreme to constitute an alteration in the conditions of employment, so that Title VII does not evolve into a "general civility code." *Faragher  v. City of Boca Raton*, 524 U.S. 788 (1998).   "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.*

Ms. Saunders alleges that the following acts of "harassment" demonstrate that she was subjected to a hostile work environment: (1) her February 2008 DOL detail; (2) her August 2008 OED detail; (3) her reassignment to the Agency's Office of Faith Based and Community Initiatives in May 2009; (4) her lack of an interview and selection after the Agency posted the Training Chief position was vacant in June 2009 (5) her lack of performance standards or written performance appraisals beginning in October 2009; (6) her receipt of a "4" on her 2009 performance rating; (7) her diminished responsibilities when she returned to her position as Training Chief in June 2010; and (8) her receipt of a letter of counseling in July 2010.

Plaintiff's attempt to cobble eight separate acts over a two-and-a-half year period into a hostile work environment claim fails.  *See Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009) ("Cobbling together a number of distinct, disparate acts will not create a hostile work environment, because discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment.").  None of the acts shows that Ms. Saunders was subjected to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see also Houston v. SecTek*, 680 F.Supp. 2d 215, 225 (D.D.C. 2010) ("Allegations of undesirable job assignment or modified

-16-

job functions and of . . . unprofessional and offensive treatment are not sufficient to establish that

[Plaintiff's] work environment was permeated with discriminatory intimidation, ridicule, and

insult") (citation and quotations omitted), *aff'd* 407 Fed.Appx. 490 (D.C. Cir. 2011).  The Court

will dismiss Ms. Saunders' hostile work environment claim.

## IV.  CONCLUSION

Plaintiff's complaint about her details to DOL and OED are time-barred;

Plaintiff's claim regarding her 2009 performance evaluation is premature; the letter of counseling

Plaintiff received is not an "adverse action;" and Plaintiff has failed to state a claim for a hostile

work environment. Accordingly, the Court will dismiss these claims and grant in part

Defendant's Partial Motion to Dismiss [Dkt. # 9].  The motion will be denied with respect to

Plaintiff's claim that her responsibilities as Training Chief were reduced for discriminatory and

retaliatory reasons.  A memorializing Order accompanies this Memorandum Opinion.


Date: February 8, 2012                                  _____/s/_____

                                                       ROSEMARY M. COLLYER
                                                       United States District Judge