**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| KARLA SAUNDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-486 (RMC) |
| | ) | |
| KAREN G. MILLS, Administrator, | ) | |
| Small Business Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPINION**

This case arises from the grueling relationship between Karla Saunders and her former employer, the Small Business Administration (SBA). After five amended complaints, Ms. Saunders now alleges that she was discriminated against on the basis of her race (African American) and sex (female) and retaliated against for protected Equal Employment Opportunity (EEO) activity in violation of Title VII. Ms. Saunders sues Karen Mills in her official capacity as the Administrator of SBA.

SBA has filed a Motion to Dismiss or, in the alternative, for Summary Judgment. Mot. for Summ. J. [Dkt. 64] (MSJ).[1] Ms. Saunders filed a timely opposition, to which SBA replied. Ms. Saunders conceded and waived several of her discrimination and retaliation claims.

---

[1] SBA filed its motion on July 29, 2015, *see* Dkt. No. 62. On August 4, 2015, it filed an Errata Sheet with a new memorandum in support of the motion and a list of exhibits, *see* Dkt. 64. Ms. Saunders did not oppose SBA's second set of pleadings. Therefore, the Court will consider the SBA's August 4 materials. The Court also notes that Ms. Saunders also filed an Errata Sheet with her opposition and supporting documents on November 5, 2015, which the SBA did not oppose. *See* Opp'n [Dkt. 70].

However, as it remains, this case is replete with genuine issues of material fact that preclude summary judgment except in part. For the reasons that follow, the Court will grant in part and deny in part Defendant's Motion.

## I. FACTS

Ms. Saunders is a black female who used to work at SBA. In 2005, she was selected for the position of Chief of the Training and Benefits Division (later named Training and Development Division (TDD)) in SBA's Office of Human Capital Management (OHCM). As Training Chief of the Division, Ms. Saunders held a position at a GS-14 level. She was selected and supervised by Richard Brechbiel, the Chief Human Capital Officer (CHCO) at SBA. After one month as Training Chief, Mr. Brechbiel promoted Ms. Saunders to the GS-15 level. In addition to Mr. Brechbiel, Ms. Saunders's second line supervisor was Darryl Hairston.

In 2006-2007, Ms. Saunders joined two other employees in complaining to SBA's Administrator about systemic discrimination and retaliation at the agency. After an independent investigation of these complaints, Mr. Brechbiel was transferred to a different position. On November 2, 2007, Napoleon Avery became Acting CHCO and, thus, Ms. Saunders's new supervisor. Mr. Avery became the new CHCO in January 2008. In the same month, Annie Spiczak assumed the position of Deputy CHCO, Molly Wilkerson became the new Chief of Staff to the Administrator, and Robert Danbeck joined SBA as Associate Administrator for Management & Administration. Soon after these personnel changes, Ms. Saunders was detailed to the Department of Labor (DOL) from February 11, 2008 to July 30, 2008 and to SBA's Office of Entrepreneurial Development (OED) from August 11, 2008 to April 4, 2009.

After her detail at OED, Ms. Saunders did not return as Training Chief because Dionne Martin had assumed the position of Training Chief during her details. Instead, Ms.

Saunders was reassigned to SBA's Office of Faith Based and Community Initiatives (OFBCI) as a Senior Advisor. Ms. Saunders claims that her reassignment to the OFBCI was both discriminatory and retaliatory. She started her job at the OFBCI on May 24, 2009 and worked there for one year. In June 2009, Ms. Martin ended her detail as Training Chief. SBA quickly issued a vacancy announcement for the position. While she was Senior Advisor at the OFBCI, Ms. Saunders applied to her former position as Training Chief, but was not interviewed.

On June 1, 2010, the Office of Special Counsel (OSC) reached an agreement with SBA to return Ms. Saunders to her original position as Training Chief. Kevin Mahoney became her direct supervisor at TDD. Thereafter, Ms. Saunders asserts that SBA committed a series of discriminatory and retaliatory acts against her. For example, she alleges that SBA removed her subordinates, frustrated her attempts to fill vacancies, reduced her responsibilities and duties, failed to give her any performance standards, failed to give her quality step increases and formal written performance appraisals, assigned her to ridiculous and useless tasks, and reorganized the division to make her job more difficult. She also claims that she was the subject of unfair disciplinary actions, as well as low performance ratings that resulted in economic harm.

On June 26, 2014, SBA removed Ms. Saunders from her position. OSC once again intervened and she was reinstated. On September 3, 2014, Ms. Saunders retired from SBA, claiming she was constructively terminated because SBA made her working conditions intolerable and she was no longer willing to withstand the incessant discrimination and retaliation.

Ms. Saunders filed this lawsuit on March 7, 2011. Since then, Ms. Saunders has amended her complaint several times to add allegations of discrimination and retaliation during her employment at SBA. On February 8, 2012, this Court granted in part and denied in part

SBA's first Motion to Dismiss.  *See* Order [Dkt. 20].  The Court dismissed several claims, including those regarding Ms. Saunders's details to DOL and OED and her hostile work environment claim.  On February 3, 2015, Ms. Saunders filed her Fifth Amended Complaint to include new allegations — specifically, her constructive discharge from SBA in September 2014. *See* Compl. [Dkt. 57].

## II. LEGAL STANDARDS

### A.  Standard of Review

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  A court must treat the complaint's factual allegations as true, "even if doubtful in fact," *id.*, but a court need not accept as true legal conclusions set forth in a complaint, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.  A complaint must allege sufficient facts that would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference,

and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). If, in considering a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" *Holy Land Found. For Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id*. at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id*. at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

5

### B.  Discrimination under Title VII

Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, prohibits status-based discrimination in federal and D.C. workplaces. 42 U.S.C., § 2006; *see also* Equal Employment Opportunity Act of 1972, Pub. L. 92-261, sec. 10, § 715, 86 Stat. 103, 111, codified as amended at 41 U.S.C. § 2000e-16 (extending Title VII to the federal government and the District of Columbia).  It generally prohibits a federal employer or District of Columbia from making any "personnel decision[]" based on an employee's race, color, sex, religion or nationality.  *See* 42 U.S.C. § 2000e-16; *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015).  The "two essential elements of a discrimination claim" under Title VII are "that [1] the plaintiff suffered an adverse employment action [2] because of the plaintiff's race, color, religion, sex, [or] national origin." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (collecting cases).

The first element, an "adverse employment action," is an established legal term. *See generally Douglas v. Donovan*, 559 F.3d 549, 551-52 (D.C. Cir. 2009); *Ginger v. Dist. of Columbia*, 527 F.3d 1340, 1343 (D.C. Cir. 2008).  It means "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  An employee must "experience[] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002); *see also Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (distinguishing between non actionable "purely subjective injuries" and actionable "objectively

tangible harm"). An actionable adverse action "in most cases inflicts direct economic harm." *Burlington Indus.*, 524 U.S. at 762. Thus, "not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).

      To satisfy the second element, a plaintiff can claim that the "adverse employment action" violated Title VII on either of two grounds. First, she can claim that it was perpetrated "because of" her race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Second, she can claim that any of those qualities "was a motivating factor for [the] employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m).[2] The first is known as a "single-motive" or "pretext" theory of discrimination, and the second is known as a "mixed-motive" theory.[3] *See generally Fogg v. Gonzales*, 492 F.3d 447, 451 (D.C. Cir. 2007).

      If a plaintiff can summon direct evidence of discriminatory intent under either theory, such evidence will "generally entitle [the] plaintiff to a jury trial" and defeat a defendant's motion for summary judgment. *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam) (quoting *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247

---

[2] Section 2000e-2(m) was added by the Civil Rights Act of 1991, Pub. L. 102-166, § 107(a), 105 Stat. 1071, 1075.

[3] Under a mixed-motive theory, a plaintiff can establish an unlawful employment practice by showing that "discrimination or retaliation played a 'motivating part' or was a 'substantial factor' in the employment decision . . . without proving that an impermissible consideration was the sole or but-for motive for the employment action." *Fogg v. Gonzales*, 492 F.3d 447, 451 (D.C. Cir. 2007) (quoting *Porter v. Natsios*, 414 F.3d 13, 18, 19 (D.C. Cir. 2005)). In a mixed-motive case, the defendant may offer a "limited affirmative defense" that it "would have taken the same action in the absence of the impermissible motivating factor." *Porter*, 414 F.3d at 19 (citing 42 U.S.C. § 2000e-5(g)(2)(B)). If so, the court "shall not award damages or issue an order requiring any . . . reinstatement, hiring, promotion, or payment." 42 U.S.C. § 2000e-5(g)(2)(B)(ii). A plaintiff who is successful in a mixed-motive case to which the employer has presented a limited affirmative defense, can only obtain injunctive relief, declaratory relief, and attorney's fees and costs. *Id.* § 2000e-5(g)(2)(B)(i).

(D.C. Cir. 2011)).[4]  Indeed, "if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985)).  But if the plaintiff can only adduce circumstantial evidence of discrimination, *i.e.*, a prima facie case only, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The *McDonnell Douglas* framework applies as follows.  The plaintiff must first make a prima facie case (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination.  *Youssef v. F.B.I.*, 687 F.3d 397, 401-02 (D.C. Cir. 2012); *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002); *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).  The burden then shifts to the defendant, which must "articulate some legitimate, nondiscriminatory reason" for its action.  *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  If it does, then the plaintiff must show by a preponderance of the evidence that the reason advanced by the employer was merely a pretext to hide discrimination.  *Id.*[5]

---

[4] Entitlement to a jury trial can arise from the evidence itself.  *Ayissi-Etoh*, 712 F.3d at 576-77 ("[W]hen the issue comes down to a credibility contest of this kind, we cannot resolve the dispute at the summary judgment stage against the non-moving party.  [The] statement alone is direct evidence that in this case entitles [plaintiff] to a jury trial.").

[5] The D.C. Circuit has recently expounded upon the "multiple ways in which circumstantial evidence may support an inference that an employer's stated reason for a challenged employment action was not the actual reason," and that the real reason was prohibited discrimination or retaliation:

> The temporal proximity of an adverse action close on the heels of protected activity is a common and highly probative type of circumstantial evidence of retaliation.  *See Hamilton* [*v. Geithner*], 666 F.3d [1344,] 1357–59 [(D.C. Cir. 2012)].  Other common ways

On a motion for summary judgment, once an employer articulates a legitimate, non-discriminatory reason for its action(s), the plaintiff's prima facie case is only relevant in the context of the evidence as a whole. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). "[I]n considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08, 511 (1993); *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714-16 (1983)).

## C. Retaliation under Title VII

Evidence of retaliation may be direct or circumstantial. To establish a retaliation claim, a plaintiff must demonstrate that: (1) she was engaged in a protected activity; (2) the

---

of proving invidious motive—whether retaliation or discrimination—include evidence that the employer treated other, similarly situated employees better; that the employer is "lying about the underlying facts" of its decision; that there were "changes and inconsistencies" in the employer's given reasons for the decision; that the employer failed to "follow established procedures or criteria"; or that the employer's "general treatment of minority employees" (or, in the retaliation context, employees who asserted their Title VII rights) was worse than its treatment of non-minorities (or employees who did not assert their Title VII rights). *Brady [v. Office of Sergeant at Arms]*, 520 F.3d [490,] 495 & n. 3 [(D.C. Cir. 2008)]. Invidious motive may also be inferred from "'an error too obvious to be unintentional.'" *Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 26 (D.C. Cir. 2013) (quoting *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)).

*Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015).

employer took a materially adverse employment action; and (3) there is a causal connection between the protected activity and the materially adverse action. *Brown v. Paulson*, 597 F. Supp. 2d 67, 73 (D.D.C. 2009) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Before a factfinder can infer causation, there must be evidence that the employer was aware of the protected activity. *See Holcomb*, 433 F.3d at 901-02.

Importantly, retaliatory conduct need not reach the same level of adversity as discriminatory conduct. *See generally Mogenhan v. Napolitano*, 613 F.3d 1162, 1165-66 (D.C. Cir. 2010). In other words, "Title VII's substantive [discrimination] provision and its anti-retaliation provision are not coterminous" because the "scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Steele v. Schafer*, 535 F.3d 689, 695 (quoting *Burlington N.*, 548 U.S. at 67). Instead of only "affecting the terms, conditions, or privileges of employment," as must a discriminatory adverse action, retaliatory conduct need only "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Mogenhan*, 613 F.3d at 1166 (quoting *Burlington N.*, 548 U.S. at 68). Nonetheless, this material adversity requires "more than 'those petty slights or minor annoyances that often take place at work and that all employees experience.'" *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Burlington N.*, 548 U.S. at 68).

Retaliation also differs from discrimination in its causation: retaliation claims must be proved according to traditional principles of but-for causation. *Univ. of Tex. SW Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) ("[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). Thus, there is no "mixed motive" retaliation. *Cf. EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015) (contrasting *Nassar*'s but-for

standard in retaliation cases with the more "relaxe[d]" standard in Title VII's mixed-motive discrimination provision, 42 U.S.C. § 2000e-2(m)).

Finally, retaliation claims based only on circumstantial evidence are subject to the same burden-shifting framework of *McDonnell Douglas*, as outlined above. *See Allen*, 795 F.3d at 39.

## III.  ANALYSIS

### A.  Reassignment to OFCBI

Ms. Saunders alleges that she was discriminated and retaliated against when she was reassigned on May 24, 2009 from her official position as Chief of the TDD to the position of Senior Advisor in OFBCI. Compl. ¶ 156(a). With respect to her discrimination claim, Defendant argues that Ms. Saunders cannot establish that: (1) she was treated differently from a similarly situated employee outside her protected classes (i.e., gender and race); and (2) SBA articulated legitimate non-discriminatory reasons that do not constitute pretext for discrimination.

As to the first argument, Defendant only states, "Plaintiff has no evidence of another manager in OCHM within the same grade level and having similar responsibilities whose employees made numerous complaints to upper management about the manager and requested transfers or left the Agency." MSJ at 15. There may be only one human being who could fit that narrow and detailed description — Ms. Saunders herself. The similarly-situated analysis does not require evidence of a virtually identical employee who was treated more favorably. The purpose of this requirement "is to 'provide plaintiffs the 'boost' that the *McDonnell Douglas* framework intended.'" *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012) (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 406 (7th Cir. 2007), *aff'd,* 553 U.S.

442 (2008)) (other citation omitted).  If this Court were to agree with Defendant's comparator, it would "transform this evidentiary 'boost' into an insurmountable hurdle." *Id.*

Moreover, the D.C. Circuit has warned district courts against focusing too much on the employee's burden to make out a *prima facie* case at the summary judgment stage.  In *Brady v. Office of Sergeant at Arms*, the Circuit noted that the district court's "focus on the prima facie case [under *McDonnell Douglas*] was not atypical" because "district courts often wrestle with th[is] question" when deciding an employer's motion for summary judgment or judgment as a matter of law in Title VII cases. 520 F.3d at 493.  The D.C. Circuit stated that this "judicial inquiry into the prima facie case is usually misplaced" because "[i]n the years since *McDonnell Douglas,* the Supreme Court's decisions have clarified that the question whether the employee made out a prima facie case is almost always irrelevant." *Id.*  "[O]nce the employer asserts a legitimate, non-discriminatory reason, the question whether the employee actually made out a prima facie case is 'no longer relevant' and thus 'disappear[s]' and 'drops out of the picture.'" *Id.* at 493-94 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510, 511 (1993); *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000)).

Relying on *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983), the D.C. Circuit has also instructed that "the prima facie case is a largely unnecessary sideshow" that has "spawn[ed] enormous confusion and wast[ed] litigant and judicial resources." The rule governing this Court's analysis of the instant case was clearly articulated in *Brady*:

> In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not — *and should not* — decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*. Rather, in considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the

> district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin? *See Hicks,* 509 U.S. at 507-08, 511; *Aikens,* 460 U.S. at 714-16.

*Brady,* 520 F.3d at 493-94 (emphasis in original).[6]

It follows that SBA's exclusive reliance on the similarly situated analysis is misplaced. A plaintiff can show discrimination through different means, including, but not limited to, evidence:

> that the employer treated other, similarly situated employees better; that the employer is lying about the underlying facts of its decision; that there were changes and inconsistencies in the employer's given reasons for the decision; that the employer failed to follow established procedures or criteria; or that the employer's general treatment of minority employees . . . was worse than its treatment of non-minorities . . . .

*Allen,* 795 F.3d at 40. Defendant's legitimate, non-discriminatory reasons for Ms. Saunders's reassignment are that: (1) TDD staff complained about Ms. Saunders's management style while she was Training Chief; and (2) SBA needed to staff the OFBCI and Ms. Saunders's background was a good fit for the position. However, SBA never told Ms. Saunders that there were any issues with her management style as Training Chief. Ms. Saunders was told only that she would be a perfect fit for the OFBCI. *See* MSJ, Ex. 9 [Dkt. 62-4] (Pickett's E-mail). SBA informed her that she was well prepared and qualified for a position and that she "could utilize [her] training and skills and bring the benefit of experience at [her] grade level to a very important effort for the agency." *Id.* In fact, her performance appraisals in FY2006 and FY2007 (the years

---

[6] This analysis applies with equal force to all of Ms. Saunders's remaining claims.

prior to her details in 2008), rated Ms. Saunders as "Extraordinary" and "Exceeds Expectations"
respectively.  *See* Opp'n, Ex. 9 [Dkt. 69-4] (2006 Appraisal) and Ex. 24 [Dkt. 69-6] (2007
Appraisal).  There was no mention of managerial deficiencies and Ms. Saunders received
performance awards based on these ratings.  *See id.*  This evidence may be accepted by a jury as
showing "inconsistencies" in SBA's articulated reasons.  *Allen*, 795 F.3d at 40.

       Finally, Ms. Saunders testified that once she was reassigned to the OFCBI, she
did not know what to do and "no work was assigned or goals were assigned for [her] to perform
to be measured or evaluated against . . . ."  Opp'n, Ex. 70 [Dkt. 69-14]; *id.*, Ex. 72 [Dkt. 69-15]
at 26.  This evidence, coupled with the fact that the SBA had temporarily promoted Shawn
Thompson (a black male and former subordinate of Ms. Saunders) in July 2009 to the position of
Training Chief, could lead a reasonable jury to find in favor of Ms. Saunders.  *See id.*, Ex. 77b
[Dkt. 70-9] (SF-52 Thompson Promotion).  Giving all inferences to Ms. Saunders as the non-
moving party, the Court finds there is a genuine issue of material fact as to whether SBA's
reasons to reassign Ms. Saunders were discriminatory and pretextual.

       This analysis also applies to her retaliation claim.  SBA's sole focus on temporal
proximity is misplaced.  Close temporal proximity between Ms. Saunders's protected activity
and her reassignment to OFBCI is not the only method of proving a causal connection.
Retaliatory motive may be inferred from other types of evidence, such as inconsistent or
dishonest explanations or a deviation from established procedures or criteria.  *See Allen*, 795
F.3d at 40; *see also Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015).  Given Ms.
Saunders's prior positive ratings and SBA's silence on her alleged managerial deficiencies, there
is a genuine issue of material fact as to whether Ms. Saunders was reassigned to OFBCI in
retaliation for her protected activity in 2006 and 2007 — particularly, her testimony in the

*Chiverton* case and her EEO discrimination complaint against OCHM leaders, primarily Mr. Brechbiel.[7]  *See* Opp'n, Ex. 3 [Dkt. 69-3] (Saunders Aff.) ¶¶ 6-8; Ex. 17 [Dkt. 69-6] (Compl. against Brechbiel).

Defendant also alleges that Ms. Saunders cannot establish the requisite knowledge of her prior protected activities in 2006 and 2007 because Chief of Staff Ana Ma, who decided to reassign Ms. Saunders to OFBCI, did not know about her protected activity.  The record shows that Mr. Hairston, who was SBA's Acting Administrator at the time and outranked Ms. Ma, authorized the reassignment and was involved with Ms. Ma and Penny Pickett (Hairston's Senior Advisor) in the decision to reassign Ms. Saunders.  *See id.*, Ex. 67 [Dkt. 69-14] (Ma Dep.) at 7-8.  There is also evidence that Mr. Hairston knew about Ms. Saunders's protected activity because: (1) he was interviewed in 2007 about a Request for Intervention (RFI) from Ms. Saunders and two co-workers to SBA's Administrator regarding allegations of discrimination and retaliation against Mr. Brechbiel and Mr. Hairston; and (2) Mr. Brechbiel wrote an angry e-mail to Mr. Hairston blaming Ms. Saunders's EEO complaint for his removal.  *See id.*, Ex. 18 [Dkt. 69-6] (Paul Hastings Report); Ex. 20 [Dkt. 69-6] (Brechbiel E-mail).  Therefore, there is a genuine issue of material fact as to who decided to reassign Ms. Saunders and, to the extent that it was Ms. Ma, whether Ms. Ma as Chief of Staff knew about the protected activity.  These questions preclude summary judgment on this claim.

---

[7] *Chiverton* involved a Title VII lawsuit against Mr. Brechbiel who selected a Caucasian female over Janice Chiverton, an African American female, for a position.  Ms. Saunders signed an affidavit and provided deposition testimony supporting Ms. Chiverton's discrimination claims. *See* Saunders Aff. ¶¶ 6-8.

### B. Announcement and Cancellation of the Training Chief Position

Shortly after Ms. Saunders's reassignment to OFBCI, SBA announced a vacancy in Ms. Saunders's former position as Training Chief. The vacancy was announced on June 9, 2009 and the closing date for applications was June 22, 2009. SBA then created a Merit Promotion Certificate of Eligibles and a Non-Competitive Candidate Referral List. Shawn Thompson (a black male) was interviewed for the position, while Ms. Saunders — who was rated highly qualified — and other black females (specifically, Mary Wilson and Sheila Clark) were not interviewed. Ms. Saunders complained to the Administrator and the General Counsel about her reassignment to OFBCI and the handling of the vacancy announcement. As a result of her complaint and after a meeting between the General Counsel and the Chief Operating Officer, Mr. Avery (CHCO at the time) placed the vacancy announcement on hold. The vacancy's certificate expired on December 30, 2009 and was cancelled on January 6, 2010.

Ms. Saunders alleges that she was discriminated and retaliated against when SBA announced a vacancy for her former position and cancelled the vacancy after she applied. *See* Compl. ¶ 156(b). As to the discrimination claim, SBA correctly asserts that a claim "premised on the cancellation of a vacancy announcement must meet the same prima facie elements required for conventional non-selection claims . . . ." *Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 31 (D.D.C. 2003) (citations omitted). SBA argues that Ms. Saunders failed to meet the prima facie elements on her non-selection claim because no one was hired to fill the position. This argument is a red herring.

A non-selection claim does not require in all cases that a vacancy be filled by a similarly situated individual outside the protected class. *Teneyck v. Omni Shoreham Hotel* described the elements of a prima facie case of discrimination in the context of a non-selection

16

claim: "(i) that [s]he belongs to a [protected class]; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite h[er] qualifications, [s]he was rejected; and (iv) that after h[er] rejection, the position remained open and the employer continued to seek applicants from persons of [the plaintiff's] qualifications." 365 F.3d 1139, 11490-50 (D.C. Cir. 2004). Under the fourth prong, even if the initial vacancy was never filled, Ms. Saunders only needs to show that SBA continued to seek applicants after she was rejected. SBA did not place the vacancy on hold until Ms. Saunders complained to the Administrator and the General Counsel.

Moreover, the D.C. Circuit has stated that "the burden of establishing a prima facie case 'is not onerous.' Its function is limited to eliminating the two most common nondiscriminatory reasons for a plaintiff's rejection: 'an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'" *Cones v. Shalala,* 199 F.3d 512, 516 (D.C. Cir. 2000) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 358 n. 44 (1977) and *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)). "In fact, this Circuit has expressly noted that a plaintiff may satisfy the fourth element of the prima facie case through evidence that the employer did, in fact, have an available vacant position, notwithstanding the cancellation of a vacancy announcement." *Lewis v. Dist. of Columbia,* 653 F. Supp. 2d 64, 74 (D.D.C. 2009) (citing *Carter v. George Wash. Univ.,* 387 F.3d 872, 883 (D.C. Cir. 2004)). The Court in *Lewis* and the Circuit in *Carter* expressly rejected a similar argument to that articulated by Defendant in the instant case. Since SBA's only argument misinterprets the law, the Court will deny the motion for summary judgment as to this claim.

With respect to her related retaliation claim, SBA argues that the vacancy posting and cancellation were not materially adverse because Ms. Saunders filed a complaint of

discrimination and, therefore, she "cannot demonstrate that she suffered any harm or injury likely to 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" MSJ at 20 (quoting *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 91 (D.D.C. 2009)). Clearly, the argument is wrong on the law. If this Court were to adopt SBA's view —that the filing of an EEO complaint proves that no retaliation occurred — there could be no such thing as a Title VII retaliation claim. SBA relies on *Faul v. Potter*, No. 06-CV-1169, 2008 WL 4835001, at *3 (N.D.N.Y. Nov. 5, 2008) to support its position. SBA omitted an important detail: the Second Circuit reversed the district court in *Faul* precisely because the retaliation analysis is an objective one that "requires careful consideration of the totality of the circumstances." *Faul v. Potter*, 355 F. App'x 527, 529-30 (2d Cir. 2009) (finding there were genuine issues of fact as to whether the employer's action was materially adverse). Both plaintiff and defendant in *Faul* agreed on appeal that the "district court erred as a matter of law in concluding that [plaintiff] could not prove that her suspension constituted such an adverse action in light of her own subsequent filing of a discrimination complaint." *Id.* at 529. The D.C. Circuit requires the same objective analysis. *See Mogenhan*, 613 F.3d at 1166 (citing *Burlington N.*, 548 U.S. at 68). Accordingly, SBA's motion as to this claim will be denied.

### C. Performance Standards, Appraisals, and Awards

Ms. Saunders alleges that SBA failed to provide her with performance standards for fiscal years 2009-2011. She also avers that she did not receive performance appraisals or ratings for FY2009. As a result, she was not eligible for a performance award or a step increase during this year. In FY2010, she received a Level 4 rating without a written appraisal and a $1,927.44 bonus. For FY2011, she received her performance appraisal one year late, in December 2012. In that evaluation, she received a Level 3 performance rating ("Meets

Expectations") but did not receive any performance award.  In her evaluations for FY2012 and FY2013, she received a Level 2 rating ("Below Expectations") without any performance awards. These matters are poorly presented and argued.  The Court identified the following claims: (1) failure to receive performance standards for FY2009-2011;  (2) failure to receive a performance appraisal and award for FY2009;  (3) failure to receive a written appraisal for FY2010;  (4) failure to receive a timely appraisal and a performance award for FY2011; (5) failure to receive a performance award due to poor ratings for FY2012-2013.  *See* Compl. ¶ 156(c), (i), (n)-(o).

### 1.  FY2009 and October through June of FY2010

SBA argues that the Court should dismiss or, in the alternative, enter summary judgment in its favor on the claims that Ms. Saunders failed to receive performance standards for FY2009 and October through June of FY2010[8] and failed to receive a performance appraisal and award for FY2009.[9]  *See* Compl. ¶ 156(c). The Court finds there are genuine issues of material fact precluding the dismissal or entry of summary judgment on these claims.  SBA has only articulated two non-discriminatory and non-retaliatory reasons for its failure to provide Ms. Saunders with performance standards and appraisals: (1) it was common practice to simply discuss the duties of the job with an employee on a detail, but not enter the employee into the system; and (2) her supervisors could not provide her with performance standards or evaluations because they supervised Ms. Saunders for fewer than 90 days.

---

[8] In June 2010, Ms. Saunders returned to her position as Training Chief.

[9] SBA originally argued that Ms. Saunders did not exhaust her claims arising from the failure to receive performance standards for this period.  SBA withdrew this argument in its reply brief and the Court will not consider it.  *See* Reply at 8.

There is a question of material fact as to whether these reasons were pretextual and discriminatory. *See Brady*, 520 F.3d at 493-94. First, Supervisory Human Resources Specialist Mary Wilson described the lack of standards or appraisals as "illegal" because it violated SBA's own policies. Opp'n, Ex. 31 [Dkt. 70-6] (Wilson Dep.) at 108. Second, SBA does not cite anything in the record to support the 90-day rule. *See* MSJ at 23-24. Third, SBA seems to require that "performance standards must be established within 30 days of an employee's entry on duty, the beginning of a performance period, or the date of a significant change in duties, like a reassignment." Opp'n at 34 (citing Ex. 50a [Dkt. 69-12] (SOP) at 2-3, 7-10). SBA's apparent deviation from such established procedures calls into question the legitimacy of its proffered reasons. *See Allen*, 795 F.3d at 40; *see also Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015). SBA also argues that Ms. Pickett sent an e-mail to Ms. Saunders with instructions for her new position at OFBCI and, as a result, she could not have been harmed by the lack of standards. However, a review of the e-mail shows that the instructions were no more than a vague and elusive description of her new role. *See* Pickett's E-mail. Ms. Saunders did not receive a detailed account of "when, how much, and how well" she needed to perform in order to be properly evaluated. SOP at 11.

SBA also argues that Ms. Saunders's failure to receive a performance award for FY2009 was not a materially adverse action of retaliation and, therefore, should be dismissed. Taking all inferences in favor of Ms. Saunders, there is a question of material fact as to whether the failure to receive a performance award due to Defendant's failure to rate her in FY2009 resulted in an economic harm. SBA's reliance on *Taylor v. Mills*, 892 F. Supp. 2d 124, 142 (D.D.C 2012) and *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) is inapposite because those cases did not involve an employee's failure to receive a performance award due to

the absence of a performance appraisal.  Instead, both cases discussed an employee's failure to receive a performance award after the employee received a negative performance evaluation. The Court agrees with Ms. Saunders that "where the Agency did not provide any standards or ratings, . . . it cannot use its own failure to argue that Plaintiff has insufficient proof of economic harm." Opp'n at 37.  To hold otherwise would allow employers to escape liability from possible discrimination or retaliation by refusing to evaluate employees and preventing them from progressing professionally or receiving performance awards.

However, even if the cited cases were applicable, they undermine SBA's position in the instant case. *Taylor* stated that to "find a causal relationship between [the lack of] performance evaluations and the loss of a financial benefit" requires "a strong[] and clear[] connection between the two," such as evidence that the employee consistently received financial awards prior to the alleged protected activity or prior to the alleged adverse action. *See Taylor*, 892 F. Supp. 2d at 143 (citing *Weber v. Battista*, 494 F.3d 179, 185 (D.C. Cir. 2007) and *Burke v. Gould,* 286 F.3d 513, 522 (D.C. Cir.2002)).

In the instant case, Ms. Saunders received substantial performance awards as a result of her ratings in FY2006-2008 and FY2010, but not in FY2009 because she was never rated for the year she was at OFBCI.  Unlike the plaintiff in *Taylor*, Ms. Saunders has adduced evidence that her "subjective expectations [that she was entitled to a performance award] were grounded in objective reality." *Taylor*, 892 F. Supp. 2d at 144.  SBA does not argue that Ms. Saunders would not have received a step increase and performance award for FY2009 had she been evaluated in accord with SBA policies.  Consequently, there is a genuine issue of material fact as to whether SBA's actions were materially adverse.

### 2. June to September of FY2010 and Lack of Written FY2010 Appraisal

SBA argues that Ms. Saunders abandoned any claim she may have had regarding the lack of her performance standards for June to September of FY2010 and for failure to receive a written appraisal for FY2010. Ms. Saunders does not dispute the argument. Accordingly, it is conceded. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd,* 98 Fed. App'x. 8 (D.C. Cir. 2004) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citations omitted). The Court will dismiss the claim that the SBA discriminated and retaliated against her by failing to provide performance standards for the period of June to September of FY2010 and for failure to issue a written appraisal for FY2010. *See* Compl. ¶ 156(c).

### 3. Performance Standards, Appraisal, and Award for FY2011

SBA makes only two arguments with respect to the claims relating to FY2011.[10] First, SBA argues that it did not issue a performance review and rating for FY2011 until December 2012 because it was in the midst of settlement negotiations with Ms. Sanders and the

---

[10] In its opening brief, SBA did not mention Ms. Saunders's claim that it discriminated and retaliated against her by failing to issue performance standards for FY2011. In its reply brief, SBA argued for the first time that "Plaintiff has abandoned, and has not exhausted her claims for performance standards for . . . FY2011 . . . ." Reply at 10. Prior to the Reply, SBA had never articulated an exhaustion argument with respect to this claim. "[I]t is improper for a party to raise new arguments in a reply brief because it deprives the opposing party of an opportunity to respond to them, and courts may disregard any such arguments." *Performance Contracting, Inc. v. Rapid Response Const., Inc.*, 267 F.R.D. 422, 425 (D.D.C. 2010) (citation omitted). The Court will not entertain the argument because it was not raised in the SBA's opening brief and, in addition, it fails to state why the claim was not exhausted.

lack of a performance appraisal and award was a subject of those negotiations.   This argument alone creates a genuine issue of material fact because a jury could reasonably infer that SBA's late appraisal was a form of discrimination against Ms. Saunders and retaliation for her exercise of protected activity.   As Ms. Saunders puts it, a jury could find that her rating depended on her settlement position.

Second, SBA contends that Ms. Saunders "cannot demonstrate that she was entitled to receive an award, much less that the failure to receive an award was materially adverse." MSJ at 53.  However, the denial of performance awards, such as alleged here, can constitute materially adverse action because it could impact an employee's "compensation and tangible benefits" and could dissuade a reasonable worker from filing or supporting a complaint of discrimination.   *Nurriddin*, 674 F. Supp. 2d at 90.  Ms. Saunders has shown that she received performance awards in FY2006-2008 and FY2010.  She did not receive a performance award in FY2009 because she was not evaluated.  This is enough to establish a causal relationship between her untimely Level 3 rating and the loss of a financial benefit.  *See Burke*, 286 F.3d at 522.  Ms. Saunders's excellent ratings in previous years, coupled with the fact that SBA delayed her FY2011 evaluation, create a genuine issue of material fact as to whether SBA's denial of a performance award for FY2011 was materially adverse.  SBA's motion will be denied as to both discrimination and retaliation claims.  *See* Compl. ¶ 156(c), (i).

### 4.  Poor Ratings and Performance Awards for FY2012 and FY2013

On November 8, 2012, Ms. Saunders received a Level 2 rating ("Below Expectations") for FY2012.  She received the same rating on November 21, 2013 for FY2013.  Ms. Saunders attacks the validity of these ratings and argues that they financially harmed her because she could have advanced a step within her grade with a Level 3 rating.  These poor

ratings also resulted in the denial of performance-based awards for FY2012 and 2013.  *See* Compl. ¶ 156(n)-(o).

        As stated above, the denial of performance awards can constitute materially adverse action because it could impact the employee's "compensation and tangible benefits" and could dissuade a reasonable worker from filing a complaint of discrimination.  *Nurriddin*, 674 F. Supp. 2d at 90.  However, Ms. Saunders abandoned her discrimination claim based on the FY2012 and FY2013 poor ratings.   In Section XIII of her opposition, Ms. Saunders claims that she properly established her *prima* facie case for retaliation and that there was a causal connection between the low ratings and her protected activity to sustain a retaliation claim.  *See* Opp'n at 51 (Section XIII, titled "Defendant Retaliated against Plaintiff by Issuing her Poor Performance Ratings for Fiscal Years 2012 and 2013.").  Ms. Saunders does not make any reference to her discrimination claim and fails to respond properly to the SBA's motion.  The discrimination claim will be dismissed.  *See Hopkins*, 284 F. Supp. 2d at 25.

        With respect to her retaliation claim, the record shows a significant discrepancy between her past ratings and the much lower 2012 and 2013 ratings.  Ms. Saunders also argues that the reasons provided for the low ratings — namely, failure to adjust to the OHCM's reorganization, fill vacant positions, and give clear guidance to employees — were pretextual. Since there are genuine issues of material fact concerning whether many of these actions giving rise to the poor ratings were retaliatory, the jury must decide whether SBA retaliated against Ms. Saunders by issuing the poor ratings and denying her the possibility of performance awards for FY2012-2013.  Finally, since Ms. Saunders had filed numerous EEO complaints against her supervisor, Donald Sanders, and had filed the instant lawsuit against Defendant prior to these appraisals, the jury must decide if there is a causal connection.

24

### D.  Diminished Duties and Responsibilities

On June 1, 2010, Ms. Saunders returned to her former position as Training Chief. Ms. Saunders alleges that SBA took a series of steps to diminish her duties and responsibilities, as well as to undermine the status of her position as Training Chief. *See* Compl. ¶ 156(d). Defendant argues that some of these actions — such as removing Mr. Thompson from her supervision, allowing employees outside of TDD to perform training functions, preventing Ms. Saunders from selecting her own intern, preventing Ms. Saunders from filling TDD vacancies in a timely manner, and proposing to create a similar position in a different division — are not materially adverse when considered individually.   The Court agrees with SBA that some of these actions in isolation — particularly, the hiring of a student summer intern by her immediate supervisor — are not materially adverse. *Bridgeforth*, 721 F.3d at 663 (holding that material adversity requires "more than those petty slights or minor annoyances that often take place at work and that all employees experience") (internal quotation marks and quotation omitted).

However, Ms. Saunders claims that these actions, when viewed in the aggregate, amounted to a materially adverse action — namely, the diminishment of responsibilities and the withdrawing of supervisory duties. *See* Compl. ¶ 156(d).  Ms. Saunder relies on *Allen*, where the D.C. Circuit recently stated, "This court has also suggested that a pattern of negative, on-the-job treatment could add up to a materially adverse employment action, even if any one of the employer's complained-of acts would not alone count as materially adverse." 795 F.3d at 47 n.5; *see also Mogenhan*, 613 F.3d at 1166 (noting that two alleged employment actions "perhaps alone but certainly in combination — suffice" to consider them materially adverse). SBA has not responded to this aggregation argument and fails to consider the overall alleged diminishment of duties and responsibilities.   Accordingly, the argument is conceded for purposes

of summary judgment.  *See Hopkins*, 284 F. Supp. 2d at 25; *see also Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) (stating that "withdrawing an employee's supervisory duties" or the "reassignment with significantly different responsibilities" are examples of adverse employment actions (quoting *Stewart v. Ashcroft,* 352 F.3d 422, 426 (D.C. Cir. 2003); *Forkkio,* 306 F.3d at 1131) (other citations omitted)). [11]

Moreover, whether some of SBA's actions were taken due to discriminatory or retaliatory animus or due to Ms. Saunders's incompetence and inadequate work product is hotly contested.  The SBA's motion will be denied.

### E.  Assignment of Ridiculous and Useless Tasks

Ms. Saunders alleges that "[s]ince May 2011, management assigned [her] ridiculous and useless tasks." Opp'n at 38; *see also* Compl. ¶ 156(e).  One example is that on August 9, 2011, Ms. Saunders and her immediate supervisor, Donald Sanders, were in Baltimore conducting training and Mr. Sanders told her to drive to Washington D.C. to retrieve a document for the Baltimore training program.  According to Ms. Saunders, Mr. Sanders already had the document.  In any event, Ms. Saunders conceded in her opposition that this directive was not an adverse action.  In addition, SBA's arguments that there is no evidence that the directive was either discriminatory or retaliatory are unopposed.  Accordingly, the Court will dismiss the claims based on the assignment of ridiculous and useless tasks.

---

[11] As did the plaintiff in *Czekalski*, Ms. Saunders "has raised a genuine issue as to whether the reassignment [to the TDD] left her with 'significantly different' — and diminished — supervisory and programmatic responsibilities."  475 F.3d at 364.

### F.  The Journal-Tampering Investigation

Ms. Saunders alleges that SBA discriminated and retaliated against her when it conducted a "meritless misconduct investigation against [her]." Compl. ¶ 156(f).  In its opening brief, the SBA elaborates on this allegation on behalf of Ms. Saunders.[12]  In August 2011, Don Helleu, Ms. Saunders's subordinate at the TDD, told Donald Sanders that pages had been torn out of his personal journal.  Mr. Helleu also indicated that Ms. Saunders knew about the journal and that she could have accessed Mr. Helleu's office during the weekend.  Mr. Sanders told Mr. Helleu not to touch the notebook so that it could be dusted for fingerprints.  Mr. Mahoney and Mr. Sanders brought investigators from the Social Security Administration to conduct an inquiry into the matter and to focus on Ms. Saunders as a suspect.  Mr. Sanders requested a Datawatch report to retrieve Ms. Saunders's door-access data.  He also requested a similar report regarding every person who worked on the same floor. The investigators interviewed Ms. Saunders, Mr. Helleu, and other employees and concluded that "[t]here was no way to determine what actually happened."  MSJ, Ex. 75 [Dkt. 63-5] (Investigation Memo) at 15.  Thus ended the saga of the journal-tampering investigation.

SBA first argues that the investigation was not materially adverse and, therefore, it should be entitled to summary judgment on the discrimination and retaliation claims.  In its opening brief, SBA invoked only the materiality standard for discrimination claims, thereby waiving any argument as to why the investigation was not materially adverse for retaliation

---

[12] The Complaint only alleges that "since May 2011," SBA conducted a "meritless misconduct investigation against [her]." Compl. ¶ 156(f).  The allegation is devoid of any facts or substance and fails to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678-79; *see also Twombly*, 550 U.S. at 570.  However, SBA opted to inject facts not alleged in the Complaint.

purposes. *See* MSJ at 46-47. If this were not confusing enough, Ms. Saunders's opposition exclusively focused on why the investigation was materially adverse for retaliation purposes, but not for discrimination purposes. *See* Opp'n at 39-40. This is just one of many examples in which the parties confused the standards for discrimination and retaliation claims.

Retaliatory conduct need not reach the same level of adversity as discriminatory conduct because the "scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Steele*, 535 F.3d at 695 (quoting *Burlington N.*, 548 U.S. at 67). In other words, "Title VII's substantive [discrimination] provision and its anti-retaliation provision are not coterminous." *Id.* Ms. Saunders abandoned her discrimination claim by not addressing it. [13] The claim will be dismissed. *See Hopkins*, 284 F. Supp. 2d at 25.

With respect to Ms. Saunders's retaliation claim, SBA simply says, without explanation or legal support, that "a reasonable worker would not be dissuaded from filing or supporting a charge of discrimination simply because her employer initiated an investigation of another employee's allegations of theft." MSJ at 48. This presents only a legal conclusion, not an argument. "It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its

---

[13] In any event, the Court agrees with SBA that there is no evidence that the investigation "affect[ed] the terms, conditions, or privileges of employment, or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio*, 306 F.3d at 1131. "[M]ere investigations by plaintiff's employer cannot constitute an adverse action because they have no adverse effect on plaintiff's employment." *Mack v. Strauss*, 134 F. Supp. 2d 103, 114 (D.D.C. 2001) *aff'd*, No. 01-5122, 2001 WL 1286263 (D.C. Cir. Sept. 28, 2001); *see also Yerdon v. Henry*, 91 F. 3d 370, 378 (2d Cir. 1996) (holding that charges of wrongdoing and a misconduct investigation alone are not adverse actions because "if the charges were ultimately dismissed, [the plaintiff] would not have suffered any adverse effect from them").

bones." *North v. Smarsh, Inc.*, No. 15-cv-494 (RMC), 2015 WL 8023999, at *10 (D.D.C. Dec. 4, 2015) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).  SBA waived any arguments on whether the investigation was materially adverse and potentially retaliatory.

In addition, whether the investigation was retaliatory or legitimate is contested. The jury must evaluate the facts surrounding the investigation and determine if there is a causal connection between the protected activity and the journal-tampering investigation.  SBA's motion as to this retaliation claim will be denied.

### G. OHCM's Reorganization

On August 30, 2011, and again on November 16, 2011, Ms. Saunders was told that her position as Training Chief would be abolished and that she would have to apply to a different non-guaranteed position within SBA. *See* Compl. ¶ 156(g)-(h).   This was part of a much broader reorganization of the Office of Human Capital Management.  Mr. Mahoney testified that he "initially considered having the new GS-15 positions open for competition, wherein all division heads would have to re-compete for the positions."  MSJ at 50.  However, he changed his mind and concluded that the "fair thing to do was to place all the division chiefs, [such as Ms. Saunders], in division jobs, and give them the opportunity to work in the new structure." *Id.* (quoting Mahoney Dep. 138-159).

Ms. Saunders did not suffer any tangible harm as a result of an announcement that never materialized.  Ms. Saunders seems to acknowledge this fact when she argues in her opposition that "[w]hile these incidents may not stand on their own as adverse actions or materially adverse actions, these are the types of actions (along with others) that interfered with Plaintiff's ability to carry out the duties and responsibilities of her position."  Opp'n at 41-42.

29

The Court finds that Ms. Saunders abandoned her claims based on the OHCM's proposed reorganization and they will be dismissed.

### H. Proposed Demotion

On February 14, 2012, Mr. Sanders issued a Notice of Proposed Demotion to Ms. Saunders for, *inter alia*, alleged confrontational behavior and failure to follow directives. The Complaint alleges that SBA discriminated and retaliated against Ms. Saunders by issuing this notice consisting of false allegations against her. *See* Compl. ¶ 156(j). SBA moves to dismiss or, in the alternative, for summary judgment.

In her opposition, Ms. Saunders only responds to SBA's arguments regarding her retaliation claim. *See* Opp'n at 43-47. Therefore, she has abandoned her claim that SBA discriminated against her by issuing the Notice of Proposed Demotion. *See Hopkins*, 284 F. Supp. 2d at 25. Even if Ms. Saunders did not abandon her discrimination claim, it must be noted that she complained about a proposed demotion that never materialized and never "affect[ed] the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio*, 306 F.3d at 1131. It follows that the proposed demotion was not materially adverse for discrimination purposes.

SBA additionally argues that Ms. Saunders failed to exhaust her administrative remedies with respect to her discrimination and retaliation claims because she failed to consult with an EEO Counselor and to participate in informal counseling prior to filing a complaint. It is undisputed that on February 21, 2012, Ms. Saunders told her assigned EEO Counselor, Sandra Winston, that she was going to pursue several employment actions, including the proposed demotion. Ms. Saunders never met with Ms. Winston to discuss the allegations or to try to resolve the matter informally as required by the regulations of the Equal Employment

Opportunity Commission (EEOC), codified in 29 C.F.R. § 164.105(a).  In fact, Ms. Saunders cancelled meetings with Ms. Winston on March 7, 9, and 13, 2012.  Ms. Saunders also failed to take part in informal counseling.  Despite her failure to meet and consult with Ms. Winston, she requested a Notice of Right to File, which SBA issued.  On March 27, 2012, Ms. Saunders filed a formal complaint.  SBA dismissed the complaint on April 16, 2012 pursuant to 29 C.F.R. § 1614.107(a)(2).  Ms. Saunders did not appeal SBA's dismissal to the EEOC.

Ms. Saunders failed to exhaust her administrative remedies with respect to any claim related to the proposed demotion.[14]  SBA was not able to investigate the claims and was never given the opportunity to resolve them.  This is precisely what the exhaustion requirement seeks to prevent.  *See Brown v. Marsh,* 777 F.2d 8, 14 (D.C. Cir. 1985) ("Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary."); *see also McRae v. Librarian of Congress*, 843 F.2d 1494, 1496 (D.C. Cir. 1988) (noting that the exhaustion requirement "is intended to give the agency the opportunity to right any wrong it may have committed").  "The exhaustion requirement is not a mere legal pleasantry — rather, it is a natural outgrowth of fidelity to the principle of separation of powers, and it constitutes an indispensable prerequisite to a lawsuit in federal court." *Silver v. Leavitt*, No. 05-cv-0968 (JDB), 2006 WL 626928, at *9 (D.D.C. Mar. 13, 2006) (citation omitted).  Since Ms. Saunders failed to

---

[14] Ms. Saunders acknowledges that she did not meet with Ms. Winston due to scheduling conflicts.  *See* Saunders Aff. ¶ 40.  She argues that she would have participated in informal counseling had she known her EEO complaint could be dismissed.  *See id.*  As evidenced by her extensive protected activity and numerous EEO complaints, Ms. Saunders was quite familiar with this process.  It is clear that she failed to exhaust her administrative remedies on the proposed demotion and that she did not appeal the complaint's dismissal to the EEOC.

satisfy the exhaustion requirement on these claims, she "will be denied a judicial audience." *Brown*, 777 F.2d at 13.

Ms. Saunders resists this conclusion by invoking the "like or related to" exception to the exhaustion requirement. *Weber*, 494 F.3d at 183; *see also* 29 C.F.R. § 1614.107(a)(2). Under this exception, exhaustion is not required for a new claim that is "'like or related to' a *pending claim* if it 'could have reasonably been expected to grow out of the original complaint during the investigation.'" *Weber*, 494 F.3d at 183 (quoting *Core v. Brownlee,* EEOC Doc 01A34550, 2004 WL 189570, at *1 (E.E.O.C. Jan. 23, 2004)) (emphasis added). If a new claim could have reasonably been expected to grow out of an earlier one, "[t]here is no requirement that the amendment be subject to counseling." *Id.*

Ms. Saunders claims here that her "claim regarding the proposed demotion [in February 2012] is based on the same acts of discrimination and retaliation that led to the Letter of Reprimand [received on August 6, 2012], and Defendant does not dispute that Plaintiff's claim regarding the Letter of Reprimand was administratively exhausted." Opp'n at 44. The underlying rationale of the "like or related to" exception is that a similar or related claim brought in an earlier complaint serves as constructive notice to the agency of a new unexhausted claim. But a new claim (i.e., proposed demotion) cannot grow out of a discriminatory act that has not occurred (i.e, letter of reprimand). The Letter of Reprimand was issued in lieu of the proposed demotion. Since "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," and Ms. Saunders failed to exhaust her administrative remedies with respect to the proposed demotion, her claims about it will be dismissed. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002).

## I.   Letter of Reprimand

The February 14 Notice of Proposed Demotion contained two charges against Ms. Saunders: (1) Conduct Unbecoming of a Government Employee and (2) Failure to Follow a Directive.  The first charge alleged that Ms. Saunders exhibited "uncooperative, confrontational, and deceptive behavior" toward Mr. Sanders on three separate occasions during an August 2011 Baltimore training conference.  MSJ, Ex. 52 [Dkt. 63-1] (Proposed Demotion) at 2.  The second charged alleged that she failed to provide Mr. Sanders a completed version of the Strategic Training Plan to be used at the August 2011 Baltimore training conference, having missed July 24 and August 2, 2011 deadlines.  SBA's Chief Operating Officer, Paul Christy, investigated the charges.  As the deciding official, on August 6, 2012, Mr. Christy sustained only the second charge and reduced the proposed penalty (i.e., demotion) to a letter of reprimand because there was no record of repetition of the sustained charge and that was the penalty prescribed by SBA's Table of Penalties under its Standard Operating Procedures.  *See id.*, Ex. 54 [Dkt. 63-1] (Reprimand Decision].

The Complaint alleges that Ms. Saunders was discriminated and retaliated against when Mr. Christy issued the Letter.  *See* Compl. ¶ 156(*l*).  SBA argues that the Letter of Reprimand was not a material adverse action.  Without making a distinction between the materiality standard of her discrimination and retaliation claims, Ms. Saunders argues that the Letter of Reprimand was materially adverse because her FY2012 performance appraisal, "which *likely* took the reprimand into account, was a level 2 –– too low to qualify for an in-grade step increase."  Opp'n at 48 (emphasis added).  *Id.*

With respect to her discrimination claim, Ms. Saunders has failed to provide evidence that she "experienced materially adverse consequences affecting the terms, conditions,

33

or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio,* 306 F.3d at 1131. The Letter of Reprimand was issued to mitigate a real materially adverse action — a demotion. Ms. Saunders did not lose any wages or benefits as a result of the Letter and her position was not affected. Ms. Saunders's argument that her Level 2 rating for FY2012 "*likely* took the reprimand into account" is too speculative to satisfy the materiality standard for discrimination claims. Opp'n at 48 (emphasis added). She does not cite any testimony or evidence in the record to support this speculative assertion. To avoid summary judgment, Ms. Saunders needed to present specific facts — as opposed to mere allegations or conclusory statements — that would enable a reasonable jury to find in her favor. Ms. Saunders failed to present such facts.[15]

The D.C. Circuit held in *Baloch* that a letter of reprimand that "contain[s] no abusive language, but rather job-related constructive criticism, which 'can prompt an employee to improve her performance,'" cannot be considered materially adverse for purposes of a retaliation claim. 550 F.3d at 1199 (quoting *Whittaker,* 424 F.3d at 648) (other citation omitted); *see also Herbert v. Architect of the Capitol*, 766 F. Supp. 2d 59, 75 (D.D.C. 2011) (internal quotation marks and citations omitted) (holding that a "five single-spaced" page letter of reprimand that began "by faulting the employee for his failure to perform duties as directed,

---

[15] Ms. Saunders also relies on a Second Circuit case to argue that although the Letter of Reprimand "d[id] not directly or immediately result in any loss of wages of benefits [] and d[id] not remain in the employment file permanently," it can still constitute a material adverse action. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011). However, *Millea* only addressed the materiality standard in the context of a retaliation claim. Therefore, it is inapposite to the discrimination allegation.

failure to follow a supervisor's directive[,] and unprofessional and discourteous conduct" was not materially adverse).

The Letter of Reprimand to Ms. Saunders did not contain any abusive or offensive language. It was much less "adverse" than the ones at issue in both *Baloch* and *Herbert*. The fact that the Letter also warned Ms. Saunders that she could be subject to further disciplinary actions in the event of future misconduct does not change the analysis. "[M]ere speculation that a letter of reprimand *may* lead to future punishment is insufficient to establish an adverse employment action." *Coleman v. District of Columbia,* No. 04-cv-1325 (GK), 2006 WL 2434926, at *4 (D.D.C. Aug. 22, 2006) (emphasis in original). Any "suggestion that the letter [of reprimand] may serve as the basis for some future discipline to be imposed against [him] is entirely speculative and cannot transform [it] . . . into an actionable adverse action." *Williams v. Dodaro,* 576 F.Supp.2d 72, 89 n. 14 (D.D.C. 2008).

Aside from arguing that the Letter of Reprimand lacked merit and that it might have affected her FY2012 appraisal, Ms. Saunders fails to explain how the August 6 Letter could have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Mogenhan,* 613 F.3d at 1166 (quoting *Burlington N.*, 548 U.S. at 68); *see* Opp'n at 47-49. The Court will not develop the argument on Ms. Saunders's behalf. Judgment will be entered in favor of SBA on these claims.

### J. Telework Arrangement

Ms. Saunders had a telework schedule beginning in 2010 because she suffered complications from a fall in the office and her doctor recommended that she telework once or twice a week. On July 19, 2012, Mr. Sanders suspended Ms. Saunders's telework arrangement through October 15, 2012. Mr. Sanders testified that he suspended the arrangement temporarily

because Ms. Saunders "would need significant amounts of face time with customers and colleagues to ensure successful rollout" of the new Talent Management System and the 2012 Leadership Development Program. When Ms. Saunders told him that she needed to telework for medical reasons, Mr. Sanders stated that he would reconsider the decision if Ms. Saunders provided him with medical documentation. Mr. Sanders also told Ms. Saunders that she could telework on an ad-hoc basis as long as her requests were approved in advance. Ms. Saunders provided medical documentation on September 26, 2012, which she claims SBA ignored. SBA's Office of Employment Opportunity and Civil Rights Compliance contacted Ms. Saunders the next day to discuss the documentation, but Ms. Saunders refused to meet. Mr. Mahoney extended the telework suspension to November 30, 2012.

The Complaint avers that Ms. Saunders was discriminated and retaliated against when SBA suspended her telework arrangement "indefinitely." Compl. ¶ 156(k).[16] SBA argues that the "temporary suspension of Plaintiff's ability to choose her work location on a regular basis cannot constitute a materially adverse action under either a discrimination or a retaliation claim." MSJ at 64. Ms. Saunders abandoned her claim of discrimination by limiting her argument to retaliation. *See* Opp'n at 49 ("The Agency Retaliated against Plaintiff by Suspending her Telework Arrangement Indefinitely."). She argues that SBA's explanation for the suspension was "simply a cover for its retaliation" and that there was a causal connection to her protected activity to sustain a retaliation claim. *Id.* The Court finds that Ms. Saunders has conceded her discrimination claim. *See Byrd v. Vilsack*, 931 F. Supp. 2d 27, 36-37 (D.D.C.

---

[16] The telework arrangement was suspended through October 15, 2012, and extended to November 30, 2012.

2013) (citing *Hopkins*, 284 F. Supp. 2d at 25) (dismissing plaintiff's race discrimination claim based on the denial of her telework requests because her opposition brief failed to discuss the claim).

With respect to the retaliation claim based on the same action, the Court agrees with Ms. Saunders that the suspension of her telework arrangement was materially adverse. SBA argues that "[c]ourts have 'repeatedly held that denial of a telework arrangement on its own does not constitute and adverse employment action." MSJ at 63 (quoting *Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 87 (D.D.C. 2015)); *see also Byrd,* 931 F.Supp.2d at 41 ("[T]he denial of an employee's request to work from home on a few occasions, without more, does not constitute an adverse employment action under Title VII, even under the seemingly broader standard applicable to retaliation claims."). Similarly, "requiring an employee to attend a face-to-face meeting does not rise to the level of severity that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Bright v. Copps,* 828 F. Supp. 2d 130, 148-49 (D.D.C. 2011).

These cases, however, do not support SBA's action here. They involved the *denial* of an initial telework request, as opposed to the suspension of an existing telework arrangement. The suspension of an existing privilege or condition of employment (i.e., telework arrangement) could dissuade a reasonable worker from filing or supporting a charge of discrimination against the employer because the worker could feel that the charge will result in further adverse actions and retaliation. The fact that the suspension was temporary and that Ms. Saunders could still telework on an ad hoc basis does not change the analysis. SBA fails to

dispute this point substantively.[17]   At the very least, there is a genuine issue of material fact as to whether the suspension was materially adverse.

Furthermore, Ms. Saunders has produced sufficient evidence to raise a genuine issue of material fact to avoid summary judgment on the retaliation claim.   The parties disagree as to whether there was medical documentation supporting the existing telework arrangement.   In addition, it is unclear whether SBA ignored the September 26 documentation or whether Ms. Saunders requested a reasonable accommodation.   Finally, Ms. Saunders argues that SBA's articulated reasons for the suspension were pretextual because "all the employees working on those projects [i.e., the Talent Management System and the Leadership Development Program] kept their telework arrangements except Plaintiff."   Opp'n at 49.   Finally, given Mr. Sanders's and Mr. Mahoney's ample knowledge of Ms. Saunders's previous and ongoing protected activity, a reasonable jury might infer a causal connection between her protected activities and the telework suspension.

### K.  The August 28, 2012 Incident

The Complaint alleges that Ms. Saunders was discriminated and retaliated against when Mr. Sanders yelled and waived his arms at her on August 28, 2012 and caused her to suffer a panic attack.   *See* Compl. ¶ 156(m).   Ms. Saunders wisely concedes that this incident alone does not constitute an adverse action.   *See* Opp'n at 51.   As the D.C. Circuit stated in *Baloch,* "[S]poradic verbal altercations or disagreements do not qualify as adverse actions for purposes of

---

[17] SBA's only response is to say that "a reasonable worker would not be dissuaded from filing a charge of discrimination simply because a manager suspends a telework arrangement temporarily in order to get work done." Reply at 25. This conclusory argument is devoid of legal authority.

retaliation claims." 550 F.3d at 1199. The same applies to the discrimination claim because the conditions and terms of Ms. Saunders's employment were not affected by Mr. Sanders's yelling and behavior. "We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth 'a general civility code for the American workplace.'" *Burlington N.,* 548 U.S. at 68 (emphasis in original) (quoting *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80 (1998)). The claims will be dismissed.

### L. Notice of Proposed Removal, Removal, Administrative Leave, and Loss of Computer Access

The Complaint alleges that SBA discriminated and retaliated against Ms. Saunders when: (1) on April 17, 2014, she received a Notice of Proposed Removal with false allegations, was placed on administrative leave, and her computer access was terminated; and (2) on June 26, 2014, SBA sustained the proposed removal and terminated her. *See* Compl. ¶ 156(p)-(s). The 2014 Notice of Proposed Removal contained four charges: (1) Conduct Unbecoming of a Supervisor; (2) Failure to Cooperate with an Official Inquiry; (3) Lack of Candor; and (4) Retaliation against Individual Involved in the EEO Complaint Process. Ms. Saunders was placed on administrative leave pending review of the charges, but she continued to receive her full salary and accrue benefits. However, while on leave, she lost her computer access.

Mr. Christy, who was also the deciding official when Ms. Saunders received the proposed demotion, sustained her removal. Ms. Saunders filed a complaint with the Office of the Special Counsel. As a result, SBA was ordered to reinstate Ms. Saunders and to stay her

removal for 45 days while the complaint was investigated.   On September 3, 2014, Ms. Saunders voluntarily retired.

Ms. Saunders abandoned any discrimination claim based on these events in her opposition.  *See* Opp'n at 53 ("Defendant Retaliated against Plaintiff by Proposing her Removal, Placing her on Administrative Leave, Revoking her Computer Access, and Removing her from Federal Service.")  Ms. Saunders argues only that she was a victim of retaliation.  *See id.* at 53-56.  Her discrimination claim based on these actions will be dismissed.  *See Hopkins*, 284 F. Supp. 2d at 25.

Ms. Saunders argues that her "termination remained in effect for 55 days," which prevented her from retiring as planned (on August 16, 2014) until the OSC and an administrative judge intervened to reinstate her.  Opp'n at 54.  While she was on leave, Ms. Saunders claims she was unable to work and to access documents in her computer that were relevant to her defense. She also contends that her proposed removal and administrative leave affected her reputation and were reflected on her employment record.  SBA did not respond to any of these arguments in its reply and, thus, conceded them.  *See Hopkins*, 284 F. Supp. 2d at 25.

Moreover, there are multiple issues of material fact concerning whether the underlying charges of the proposed removal had any merit.  Ms. Saunders argues that the OSC was able to convince the Merit Systems Protection Board (MSPB) to stay her removal because the charges were vague and retaliatory.  Taking all inferences in favor of Ms. Saunders, a jury must decide whether SBA's proffered reasons for the removal were legitimate or pretextual and whether there was a causal connection.  The claim will proceed to trial.

### M. Constructive Discharge

The Complaint alleges that Ms. Saunders was discriminated and retaliated against when SBA constructively terminated her on September 3, 2014. *See* Compl. ¶ 156(t). According to Ms. Saunders, SBA's discriminatory and retaliatory acts made her working conditions intolerable so she was forced to retire before the reinstatement period ended. SBA moves to dismiss the discrimination and retaliation claims based on the alleged constructive discharge because Ms. Saunders failed to file an EEO complaint and exhaust her administrative remedies. SBA does not move for summary judgment on the merits of these particular claims.

Ms. Saunders agrees that the she did not exhaust her administrative remedies, but asserts that she did not have to because, among other things, it would have been futile. The Court agrees. "Under certain circumstances, futility may constitute an exception to the requirement of exhaustion of administrative remedies in the area of employment discrimination." *Rann v. Chao*, 154 F. Supp. 2d 61, 65 (D.D.C. 2001), *aff'd as modified*, 346 F.3d 192 (D.C. Cir. 2003) (citations omitted).  In the instant case, SBA removed Ms. Saunders and when the OSC asked the SBA to stay the removal for a few months, it refused to do so. As a result, MSPB ordered SBA to stay the decision. Exhaustion of this claim would have been futile because the evidence clearly shows that SBA had no interest in mitigating its alleged error. SBA failed to respond to Ms. Saunders's futility argument and, thus, conceded it. *See Hopkins*, 284 F. Supp. 2d at 25. SBA's motion will be denied as to these claims.[18]

---

[18] In its opening brief, SBA moved to dismiss the hostile work environment claim for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This claim already was dismissed. *See* Order [Dkt. 20].

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, Dkt. 62. Specifically, the following claims will be dismissed: (1) discrimination and retaliation based on the failure to receive performance standards from June through September of FY2010 and failure to receive a written appraisal for FY2010 (Compl. ¶ 156(c)); (2) discrimination based on poor ratings and failure to receive performance awards for FY2012-2013 (Compl. ¶ 156(n),(o)); (3) discrimination and retaliation based on the assignment of ridiculous and useless tasks (Compl. ¶ 156(e)); (4) discrimination based on the journal-tampering investigation (Compl. ¶ 156(f)); (5) discrimination and retaliation based on the proposed reorganization of the Office of Human Capital Management and the plans to abolish Plaintiff's position (Compl. ¶ 156(g)-(h)); (6) discrimination and retaliation based on the 2012 Notice of Proposed Demotion (Compl. ¶ 156(j)); (7) discrimination and retaliation based on Letter of Reprimand (Compl. ¶ 156(*l*)); (8) discrimination based on the temporary suspension of Ms. Saunders's telework arrangement (Compl. ¶ 156(k)); (9) discrimination and retaliation based on August 28, 2012 incident (Compl. ¶ 156(m)); and (10) discrimination based on the 2014 Notice of Proposed Removal, removal, administrative leave, and loss of computer access (Compl. ¶ 156(p)-(s)).

The following claims will remain: (1) discrimination and retaliation based on reassignment to the Office of Faith Based and Community Initiatives (Compl. ¶ 156(a)); (2) discrimination and retaliation based on the announcement and cancellation of the Training Chief vacancy (Compl. ¶ 156(b)); (3) discrimination and retaliation based on failure to receive performance standards for FY2009 and October-June of FY2010 and failure to receive a performance appraisal and award for FY2009 (Compl. ¶ 156(c)); (4) discrimination and

retaliation based on failure to receive to performance standards for FY2011 and a timely performance appraisal and award for FY2011 (Compl. ¶ 156(c), (i)); (5) retaliation based on poor ratings and failure to receive performance awards for FY2012-2013 (Compl. ¶ 156(n),(o)); (6) discrimination and retaliation based on diminishment of responsibilities and duties (Compl. ¶ 156(d)); (7) retaliation based on journal-tampering investigation (Compl. ¶ 156(f)); (8) retaliation based on temporary suspension of telework arrangement (Compl. ¶ 156(k)); (9) retaliation based on 2014 Notice of Proposed Removal, removal, administrative leave, and loss of computer access (Compl. ¶ 156(p)-(s)); and (10) discrimination and retaliation based on constructive discharge (Compl. ¶ 156(t)).

A memorializing Order accompanies this Memorandum Opinion.


Date: March 24, 2016

                                        /s/
                                        ROSEMARY M. COLLYER
                                        United States District Judge